## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 09 B 39937 |
| | ) | Chapter 11 |
| EQUIPMENT ACQUISITION | ) | Judge Donald R. Cassling |
| RESOURCES, INC. | ) | |
| | ) | |
| Debtor. | ) | |
| —————————————————— | ) | |
| WILLIAM A. BRANDT, JR., in his capacity | ) | |
| as Plan Administrator for Equipment Acquisition | ) | |
| Resources, Inc., | ) | Adversary No. 11 A 02215 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FDIC, as Receiver for CHARTER | ) | |
| NATIONAL BANK AND TRUST, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter is before the Court on the motion of the Federal Deposit Insurance Corporation (the "FDIC"), as receiver for Charter National Bank and Trust ("Charter"), for summary judgment on the second amended complaint brought by William A. Brandt, Jr. (the "Plaintiff") in his capacity as plan administrator for Equipment Acquisition Resources, Inc. ("EAR").

EAR filed a Chapter 11 bankruptcy petition on October 23, 2009. A plan was confirmed on July 15, 2010. Under the terms of the plan, the Plaintiff was appointed plan administrator with the authority to pursue "Litigation Claims" as defined in the plan. The Plaintiff filed this

adversary proceeding against Charter on October 21, 2011. On February 10, 2012, Charter was closed and the FDIC was appointed as its receiver.

The second amended complaint seeks avoidance and recovery of transfers from EAR to Charter. Counts I and II seek relief for actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A) and 740 Ill. Comp. Stat. 160/5(a)(1). The Plaintiff seeks to recover $1,496,514.72 in payments previously made by EAR to Charter. Count III seeks to recover the value of the transfers pursuant to 11 U.S.C. § 550, and Count IV seeks to disallow the claim Charter has against EAR pursuant to 11 U.S.C. § 502(d).[1] The FDIC now stands in the shoes of Charter and has intervened in this action as a defendant.

In support of its motion, the FDIC argues that there are no material facts in dispute and that, as a matter of law and regardless of whether the elements of a fraudulent transfer can be proven, the Plaintiff cannot avoid the transfers in light of the doctrine outlined by the Supreme Court in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942) or under Congress's enactment of 12 U.S.C. § 1823(e) and § 1821(d)(9)(A). Specifically, the FDIC argues that the allegedly fraudulent transfers in question were necessarily based on a secret agreement not reflected in Charter's books and records and therefore the Plaintiff's claims must be denied.

The Court has reviewed the briefs submitted, heard oral arguments on the matter, and weighed the competing interests of the parties. For the reasons stated herein, the Court grants the motion for summary judgment in favor of the FDIC.

## I.    JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code. 28 U.S.C. § 1334(a). The federal district courts also have

---

[1] Charter filed a proof of claim on June 2, 2010 in the amount of $593,964.99 (Claim No. 89-1).

"original but not exclusive jurisdiction" of all civil proceedings arising under title 11 of the United States Code, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with 28 U.S.C. § 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has the statutory authority to issue final orders and judgments only in "core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Section 157(b)(2) contains a non-exhaustive list of "core proceedings" in which the bankruptcy court may enter a final order or judgment. 28 U.S.C. § 157(b)(2). That statutory list includes proceedings to determine, avoid, or recover fraudulent conveyances. 28 U.S.C. § 157(b)(2)(H).

By contrast, when the bankruptcy court has jurisdiction over a matter only because it is in some way "related to" the bankruptcy case, the court may not enter final judgment, but may only enter proposed findings of fact and conclusions of law. 28 U.S.C. § 157(c)(1). The proceedings in this latter category are known as "non-core" proceedings.

Counts I, II, and III are brought by the Plaintiff under 11 U.S.C. § 548, 740 Ill. Comp. Stat. 160/5, and 11 U.S.C. § 550 to avoid and recover alleged fraudulent transfers made by EAR to Charter. Even though fraudulent-conveyance claims are listed by statute as core claims, the Supreme Court has made clear that, due to Constitutional limitations upon the power of bankruptcy judges to issue final judgments in certain types of cases, fraudulent transfer claims are to be treated as non-core claims that are "related to" the bankruptcy case. *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2174 (2014). *See Krol v. Key Bank Nat'l Ass'n (In re MCK*

*Millennium Ctr. Parking, LLC)*, 532 B.R. 716, 720-21 (Bankr. N.D. Ill. 2015). However, where the parties have knowingly consented to entry of a final judgment of such claims, the bankruptcy court may enter a final judgment. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1948-49 (2015). Here, the parties have so consented.

The remaining count, Count IV, seeks the disallowance of Charter's claim under 11 U.S.C. § 502(d). The allowance or disallowance of a claim arises in a bankruptcy case and is listed as a core proceeding under 28 U.S.C. § 157(b)(2)(B). *In re Montalbano*, 486 B.R. 436, 438-39 (Bankr. N.D. Ill. 2013). Thus, the Court may enter final judgment on this count with or without the parties' consent.

## II.   APPLICABLE STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2) (made applicable by Fed. R. Bankr. P. 7056). A genuine issue of material fact is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When a defendant moves for summary judgment his burden is merely "to point out problems plaintiff would face in proving its claims[.]" *Wisconsin Compressed Air Corp. v. Gardner Denver, Inc.*, 571 F. Supp.2d 992, 1000 (W.D. Wis. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In this matter, both parties have submitted statements of material facts and both parties concede that there are no material facts which are in dispute.[2] As a result, this matter is ripe for summary judgment.

---

[2] The Plaintiff suggests that there might be additional facts, but fails to allege what these facts might be or why they would be material. (Resp. to Statement of Material Facts pp. 1-2: "[T]here are material facts in dispute between the

### III.   UNDISPUTED FACTS

Charter agreed to fund equipment-leasing arrangements with EAR.  EAR entered into a number of similar lease-financing transactions with other parties, and it is undisputed for purposes of this motion that EAR and its principals were fraudulently refinancing and re-leasing the same small pool of equipment over and over again, without disclosing that fact to its financers.  The history of EAR's behavior with respect to its financers has been discussed at length by this Court in a related matter and need not be repeated here.[3]

In this matter, the Plaintiff specifically alleges that EAR used an affiliated corporation, Machine Tools Direct, Inc. ("MTD"), as a straw man to conceal the fraudulent nature of the equipment-lease transactions.  (FDIC Statement of Facts ¶ 1.)  The Plaintiff has alleged that, in all of these transactions, EAR sold equipment to MTD, which then resold the equipment to an equipment leasing company.  (*Id.*)  The equipment leasing company, in turn, would lease the equipment back to EAR.  (*Id.*)  In return, MTD would keep a 1-2% fee for the transaction and remit the remaining funds to EAR, which then would use the funds to satisfy prior and ongoing lease obligations.  (*Id.*)  The fraud occurred when EAR repeated this pattern of selling and re-leasing equipment to and from new equipment financers, *but did so with the same equipment it had previously sold to other financers*, without disclosing to any of them that it was selling equipment to which it no longer owned title.

In the transactions at issue in this matter, the Plaintiff alleges that EAR entered into leasing agreements with Advanced Financial Solutions, Inc. ("AFS").  (*Id.* at ¶ 3.)  Those leasing

---

Plaintiff and the FDIC.  However, the FDIC has moved for summary judgment solely on the basis of 12 U.S.C. § 1823(e) and, therefore, those facts are not material for the purposes of resolving this narrow question of law.")

[3] *See, e.g., Brandt v. Rohr-Alpha, Inc. (In re Equip. Acquisition Res., Inc.)*, Bankr. No. 09 B 39937, Adv. No. 11 A 02147, 2015 WL 11794542 (Bankr. N.D. Ill. Feb. 9, 2015).

agreements were later assumed by and rolled into promissory notes with Charter as lender and EAR as the borrower. (*Id.*) The relationship between Charter and EAR is evidenced by three promissory notes. The first promissory note, for $277,018.27, was dated May 22, 2009, and was accompanied by a corresponding security agreement. (*Id.* at ¶¶ 3 & 6.) The second promissory note was for $155,556.82, dated June 24, 2009, with a corresponding security agreement. (*Id.* at ¶¶ 8 & 9.) The third promissory note was for $146,824.54, dated July 31, 2009, with a corresponding security agreement. (*Id.* at ¶¶ 14 & 17.) The total principal obligation on the three notes owed by EAR to Charter as of the petition date was $593,964.99. (*Id.* at ¶ 19.) EAR made regular monthly payments on the three notes to Charter from November 2007 through July 2009, totaling $1,496,514.72. (Second Am. Compl. ¶¶ 22 & 27.) Charter filed a proof of claim in the sum of $593,964.99, which represents the outstanding amounts due on the promissory notes (Claim No. 89-1).

## IV.    DISCUSSION

### A. Legal Standards Governing Avoidance of Fraudulent Transfers

In Count I of the second amended complaint, the Plaintiff seeks to avoid the $786,840.92 in transfers made by EAR to Charter from November 2007 through July 2009 under § 548(a)(1)(A). Section 548 of the Bankruptcy Code enables the Plaintiff to avoid pre-petition transfers of property of the debtor if such transfers were fraudulent. *See Schechter v. 5841 Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 642 (Bankr. N.D. Ill. 2006). Under § 548(a)(1)(A), a transfer can be deemed fraudulent if it was made with "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). The movant has the burden of proving a fraudulent transfer. *Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002).

Count II of the second amended complaint seeks to avoid the transfers from Count I as well as $709,673.80 in transfers that EAR made to Charter prior to November 2007 under § 5 of the Illinois Uniform Fraudulent Transfer Act, 740 Ill. Comp. Stat. 160/5(a)(1) (made applicable by 11 U.S.C. § 544(b)(1)), which is substantially similar to § 548. Actual fraud under the Illinois statute results when a debtor transfers property "with actual intent to hinder, delay, or defraud any creditor of the debtor[.]" 740 Ill. Comp. Stat. 160/5(a)(1).

The Plaintiff argues that the three notes and the subsequent monthly payments were fraudulent because they were made in furtherance of a fraudulent scheme by EAR and therefore served to hinder, delay, and defraud EAR's creditors.

## B. The *D'Oench* Doctrine and 12 U.S.C. § 1823(e)

The FDIC argues that (1) the fraudulent transactions were made possible only because of a secret agreement between EAR and MTD that was never made part of the official records of Charter; (2) the Plaintiff cannot prove its fraudulent-conveyance claim without reliance upon that secret agreement; and (3) the FDIC is not bound by any agreement that is not part of the official records of Charter. Specifically, the FDIC asserts the *D'Oench* doctrine and 12 U.S.C. § 1823(e), discussed below, as defenses to all of the Plaintiff's claims in the second amended complaint.

"The *D'Oench* doctrine began as a variety of federal common law equitable estoppel intended to protect the FDIC by making 'secret side agreements' between bank employees and borrowers unenforceable against the FDIC once it had stepped into the failed bank's shoes." *John v. Resolution Trust Corp.*, 39 F.3d 773, 775 (7th Cir. 1994).

In *D'Oench*, the Supreme Court held that a party may not enforce against the FDIC any unrecorded or secret agreement which is not contained in the records of a bank in which the

FDIC has acquired rights. 315 U.S. 447. D'Oench, Duhme & Co. sold bonds to a bank that later went into default. The bank persuaded D'Oench to execute a series of sham notes, without consideration, that were designed to allow the bank to hide the losses without requiring D'Oench to repay the lost principal. The notes were substituted for the past due bonds but continued to be recorded as performing assets on the books of the bank. In order to maintain the notes as performing assets, D'Oench agreed to make regular interest payments. Simultaneously, the bank secretly agreed that D'Oench would not be responsible for repayment of the principal. The only place that the agreement was recorded was on D'Oench's receipts for the notes.

In 1938, the bank failed and went into FDIC receivership. Later, the FDIC obtained the notes and sued D'Oench for recovery. The receipts indicating repayment of principal were not in the files of the bank, and the FDIC did not become aware of them until it demanded payment from D'Oench. D'Oench argued that it had not received any consideration for the notes and further argued that the bank had agreed not to sue D'Oench for collection. The FDIC took the position that D'Oench was estopped by virtue of its misrepresentations from asserting either defense.

The Supreme Court held that there was a federal policy to protect the FDIC against misrepresentations as to the assets in the portfolios of the banks. Because of the strong federal interest in protecting the FDIC from "scheme[s] or arrangement[s]" likely to mislead bank examiners, D'Oench was estopped from relying on its secret agreement as a defense against FDIC collection. *D'Oench*, 315 U.S. at 460. Significantly, for purposes of the present matter, even though the secret agreement in *D'Oench* was between the borrower and the failed bank, nothing in the Supreme Court's opinion stated that its holding was limited to that factual situation.

The FDIC also asserts 12 U.S.C. § 1823(e) as a defense to the Plaintiff's claims. In 1950,

Congress enacted § 2(e) of the Federal Deposit Insurance Act, which was later amended as 12

U.S.C. § 1823(e). Again, significantly for purposes of this matter, the statute narrowly defines

the boundaries of the single exception to the general rule that "[n]o agreement which tends to

diminish or defeat the interest of the [FDIC] shall be valid against the [FDIC]." Nothing in the

language of the statute suggests that the exception should be expanded beyond its literal terms:

> No agreement which tends to diminish or defeat the interest of the Corporation in
> any asset acquired by it under this section or section 1821 of this title, either as
> security for a loan or by purchase or as receiver of any insured depository
> institution, shall be valid against the Corporation unless such agreement—
>> (A) is in writing,
>> (B) was executed by the depository institution and any person claiming an
>> adverse interest thereunder, including the obligor, contemporaneously
>> with the acquisition of the asset by the depository institution,
>> (C) was approved by the board of directors of the depository institution or
>> its loan committee, which approval shall be reflected in the minutes of
>> said board or committee, and
>> (D) has been, continuously, from the time of its execution, an official
>> record of the depository institution.

12 U.S.C. § 1823(e).[4]

Section 1823(e) thus invalidated the use of any secret "agreements" as a defense or claim

against the FDIC when such an agreement was intended to defeat the right, title, or interest of the

FDIC in any asset acquired by it as either security for a loan or by a purchase and assumption

transaction. *See Howell v. Cont'l Credit Corp.*, 655 F.2d 743, 746 (7th Cir. 1981). Essentially,

§ 1823(e), "which impose[s] documentation requirements for bank agreements, derive[s] from

the common-law *D'Oench* doctrine, an estoppel rule akin to a statute of frauds that shields the

---

[4] Prior to 1989, § 1823(e) only applied to cases where the FDIC was the purchaser in a purchase and assumption transaction, not a receiver. Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989); *FDIC v. British-American Corp.*, 744 F. Supp. 116, 119 (E.D.N.C. 1990) ("Until this amendment, the statute did not apply to the FDIC as receiver.").

FDIC from claims and defenses based on unwritten agreements that reduce bank assets." *Commercial Law Corp., P.C. v. FDIC*, 777 F.3d 324, 325-26 (6th Cir. 2015).

Section 1821(d) adds to the power of § 1823(e) and states that "any agreement which does not meet the requirements set forth in [§ 1823(e)] shall not form the basis of, or substantially comprise, a claim against the [FDIC]." 12 U.S.C. § 1821(d)(9)(A). As recently as March 2016, the Seventh Circuit affirmed the use of § 1823(e) and § 1821(d)(9)(A) as a bar to claims against the FDIC. *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 317, 318-19 (7th Cir. 2016) (affirming district court's dismissal of breach of contract claim against the FDIC because the alleged agreement was not "properly memorialized in writing . . . thus the claim is barred by FIRREA").

### C. Are *D'Oench* and § 1823(e) Co-Extensive?

There is some disagreement as to whether *D'Oench* and § 1823(e) should be read co-extensively or whether instead § 1823(e) should be interpreted as having superseded *D'Oench*. *See Adams v. Zimmerman*, 73 F.3d 1164, 1168-69 n.2 (1st Cir. 1996) (discussing circuit split regarding preemption by statute); *compare Am. Fed'n of State, County & Mun. Employees v. FDIC (In re NBW Commercial Paper Litig.)*, 826 F. Supp. 1448, 1460 (D.C. Cir. 1992) (finding that Congress did not intend for *D'Oench* to be "totally preempted by FIRREA; rather, FIRREA partially codified *D'Oench*'s common law regime") *with Kessler v. Nat'l Enters., Inc.*, 165 F.3d 596, 598 (8th Cir. 1999) (concluding that *D'Oench* was preempted by § 1823(e)). The Seventh Circuit declined to address the issue. *John*, 39 F.3d at 776.

Both parties agreed at oral argument, although for different reasons, that the interplay between the common law doctrine and the statute does not substantially affect this Court's final decision in this case. First, the case law surrounding each has become so enmeshed with one

another that it is difficult to determine where *D'Oench* ends and the statute begins. *See Royal Bank of Canada v. FDIC*, 733 F. Supp 1091, 1095 (N.D. Tex. 1990). Second, both find their origin in the same policy concerns: Federal banking regulators must be able to rely on the records of banks that the FDIC insures so that they will be able to assess accurately a bank's solvency. *See Langley v. FDIC*, 484 U.S. 86, 91-92 (1987); *see also Royal Bank*, 733 F. Supp. at 1095 ("Both the statute and the common law doctrine further the same goal[.]").

In *John v. Resolution Trust Corp.*, the Seventh Circuit noted, without deciding the issue, that courts are split over whether the common law *D'Oench* doctrine is broader than § 1823(e). 39 F.3d at 776. The FDIC argues that the difference between the two doctrines does not matter because, even if the Court finds that there is no traditional agreement under § 1823(e), *D'Oench*, is an equitable doctrine that includes any "scheme" as a form of agreement. Thus, it has been held that the *D'Oench* doctrine "prevents plaintiffs from asserting as either a claim or defense against the FDIC oral agreements or 'arrangements.'" *Adams*, 73 F.3d at 1168 (quoting *Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 48-50 (1st Cir. 1991)). The language of § 1823(e), by contrast, bars only the assertion of an "agreement" that is not in writing and is not properly recorded in the records of the bank. In any event, as discussed below, the distinction between the doctrine and the statute is immaterial to the resolution of this summary judgment motion.

The scope of "agreements" precluded by § 1823(e) as evidence supporting a claim or defense is expansive. *Langley*, 484 U.S. at 91-94; *NBW Commercial Paper Litig.*, 826 F. Supp. at 1463 (stating that "agreement" should be interpreted broadly and finding that "the term 'agreement' in § 1823(e) and § 1821(d)(9)(A) includes not only misrepresentations that are

conditions to performance but also omissions").[5]  "Agreements" include promises to perform, as

well as fraudulent misrepresentations or warranties.  *Langley*, 484 U.S. at 92-96.    *Langley*

expanded the meaning of "schemes and arrangements" to include outright misrepresentations

and misleading half-truths that deceived the obligor.  It embraces both affirmative claims and

defenses and extends to arguments asserted in terms of contract or tort.  *Timberland*, 932 F.2d at

49-50; *FDIC v. LeBlanc*, 85 F.3d 815, 821 (1st Cir. 1996).  Additionally, "[the debtor] can't use

material omissions . . . for the half-truth is one form of a lie."  *FDIC v. State Bank of Virden*, 893

F.2d, 139, 144 (7th Cir. 1990) (refusing to honor a setoff because the stated reason for the setoff

was alleged misrepresentations about a loan participation and was thus precluded).  Moreover,

"oral side agreements do not bind the FDIC."  *Id*. at 143.  Additionally, *D'Oench* is not limited to

"secret" agreements.  *In re Woodstone Ltd. P'ship*, 149 B.R. 294, 297 (E.D.N.Y. 1993) (finding

that the *D'Oench* doctrine barred reliance on a modification agreement that was never executed

by the bank).  "All that is relevant is that the agreements are not in the [bank's] files."  *Fed. Savs.

& Loan Ins. Corp. v. Griffin*, 935 F.2d 691, 698 (5th Cir. 1991) ("They need not be 'secret,' only

outside the bank's records. . . .  Such unfiled agreements leave the regulators without warning

that they exist.").

    As the Supreme Court made clear in *D'Oench,* even a borrower who "may not have

intended to deceive any person" would still be estopped from raising a defense based on an

unexecuted agreement.  *D'Oench*, 315 U.S. at 459.

---

[5] The Plaintiff does not explicitly make the argument in his brief that Charter must be a party to the "secret" agreement. He has implied it in his discussion of and selective quotation from the *Jobin* decision, however, and the FDIC has explicitly addressed the issue in both of its briefs. However, the Court finds that "*D'Oench, Duhme* and § 1823(e) concern the evidence used to defeat the government's interest, not who is attempting to do so. They apply to any party attempting to defeat the government's interest in assets acquired from a failed institution[,]" not who are the "contractual" parties. *Jobin v. Resolution Trust Corp*., 160 B.R. 161, 167 (D. Colo. 1993).

### D.  Do the FDIC's Defenses Apply in Bankruptcy?

The Plaintiff argues that regardless of whether the elements are met, § 1823(e) cannot be asserted by the FDIC in a fraudulent transfer suit in bankruptcy.  This argument is supported by two rationales: (1) fraudulent transfer claims arise by operation of law and therefore § 1823(e) does not apply; and (2) a fraudulent transfer claim does not require the introduction of a secret agreement and therefore § 1823(e) does not apply.

### 1.  Is a Bankruptcy Trustee Exempt from § 1823(e)?

The Plaintiff argues that a trustee in bankruptcy cannot be estopped from asserting the terms of a secret agreement in a fraudulent transfer action because a trustee's rights arise by operation of law under the Bankruptcy Code and therefore the FDIC is subject to the trustee's special power in bankruptcy.  The Plaintiff argues that "the language of § 1823(e) does not touch the federally-created right of a bankruptcy trustee to act on behalf of innocent creditors." (Resp. p. 8.)

In *Thistlethwaite v. FDIC (In re Pernie Bailey Drilling Co.)*, 111 B.R. 565 (Bankr. W.D. La. 1990), the bankruptcy court found that § 1823(e) cannot be used as a defense against a trustee in bankruptcy because "the Trustee's avoiding powers in bankruptcy do not flow from an agreement or a condition to an agreement, but rather arise by operation of law based upon Bankruptcy Code provisions whose origins go back to the Statute of Fraudulent Conveyances.. . ." *Id.* at 574.  From this, the bankruptcy court held that "it [was] inappropriate to stretch *D'Oench* beyond its present confines so that it would conflict with federal bankruptcy statutes.  Neither the Bankruptcy Code (Title 11) nor the National Bank Act (Title 12) contains language suggesting that the FDIC should be treated differently than other entities under the Bankruptcy Code." *Id.*

In addressing this issue, the Court turns first to *Jobin v. Resolution Trust Corp.*, upon which both parties rely. 160 B.R. 161. *Jobin* reaches two conclusions that are relevant to this matter: (1) § 1823(e) can be used in bankruptcy and *Pernie Bailey* was wrong in deciding otherwise; but (2) § 1823(e) will not apply where there is no secret agreement between the debtor and the financial institution which has been acquired by the FDIC. The Court agrees with the *Jobin* court's first conclusion, but disagrees with its second.

With respect to *Jobin*'s first conclusion, that court "reject[ed] the *Pernie Bailey* court's reasoning" and found "that the Bankruptcy Code and § 1823(e) should be interpreted in a way to give meaning to both." *Id.* at 166. The court reasoned that "[b]oth entities [the bankruptcy trustee and the FDIC] are equally deserving of specialized tools to carry out their powers. Like the Trustee, the [FDIC] 'does not voluntarily step into the shoes of the bank; it is thrust into those shoes.'" *Id.* at 167 (internal citation omitted).

The Court strongly agrees with this conclusion. The Court rejects the Plaintiff's argument that a trustee in bankruptcy is immune from Title 12 defenses and holds that the Bankruptcy Code and § 1823(e) should be interpreted in such a way as to give meaning to both Title 11 and 12. *See id.* at 166-67.[6] While the trustee represents innocent creditors of the debtor, the FDIC likewise acts on behalf of innocent depositors in the failed savings institution. Here, both the Plaintiff and the FDIC are equally deserving of specialized tools to carry out their powers. As in *FDIC v. O'Melveny & Myers*, the FDIC here "was neither a party to the original

---

[6] In its reply brief, the FDIC cites to 12 U.S.C. § 1821(d)(17) to further establish that its rights to avoid transfers are actually "superior to comparable rights of the bankruptcy trustee." (Reply p. 9 quoting *Jahn v. FDIC*, 828 F. Supp.2d 305, 313 (D.D.C. 2011)). Section 1821(d)(17)(D) states that "[t]he rights under this paragraph of the Corporation and any conservator described in subparagraph (A) *shall be superior to any rights of a trustee* or any other party (other than any party which is a Federal agency) *under Title 11*." 12 U.S.C. § 1821(d)(17)(D) (emphasis added). However, this argument was first brought up on reply. It is well-established that arguments raised for the first time in a reply brief are waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). Moreover, the FDIC fails to explain how this provision relates to the alleged FDIC superiority under § 1823(e).

inequitable conduct nor is it in a position to take action prior to assuming the bank's assets to cure any associated defects or force the bank to pay for incurable defects." 61 F.3d 17, 19 (9th Cir. 1995). *D'Oench* and § 1823(e) focus on the nature of evidence admissible to diminish or defeat the FDIC's interests in assets from a failed institution, not whether the claim against the government is asserted under state or federal law. *Jobin*, 160 B.R. at 167.

But this Court strongly rejects the Plaintiff's second argument from the *Jobin* decision that the secret agreement in question must be one between a debtor and the acquired bank.[7] To the extent the *Jobin* decision holds otherwise, the Court declines to follow it, for two reasons.

First, there does not appear to be any requirement explicitly stated in either *D'Oench* or in § 1823(e) mandating that the acquired bank be a party to the secret agreement. The *Jobin* court appears to have simply assumed that to be the case, perhaps because it is true of the majority of fact situations in which the *D'Oench* defense arises. While it may be true that many – perhaps most – cases in which these defenses are asserted involve secret agreements between the acquired bank and its borrower, nothing in *D'Oench* or in § 1823(e) requires that factor be present. Indeed, there are strong policy reasons to reject that requirement.

Consider the inequitable and even nonsensical results that would occur if that requirement were to be applied here. If Charter had been guilty of being a party to the secret arrangement that made EAR and MTD's fraud possible, then the FDIC would be off the hook under the *D'Oench* doctrine. But because Charter was, for purposes of this motion, an unwitting victim of EAR and MTD's scam and entirely ignorant of their secret arrangement, then the

---

[7] The Court notes that like the court in *Jobin,* the court in *Gallant v. Kanterman (In re Kanterman)* concluded that *D'Oench* and § 1823(e) do not estop a bankruptcy trustee's claims for fraudulent transfer where there is no agreement between the debtor and the lender. 108 B.R. 432, 434-35 (S.D.N.Y. 1989).

Plaintiff argues that the FDIC should be right back on the hook. That is a result that makes absolutely no sense from any rational policy perspective.

Moreover, *D'Oench* and § 1823(e) have been applied by numerous courts to bar claims arising under federal law, including in the bankruptcy context. *See, e.g., Capitol Bank & Trust Co. v. 604 Columbus Ave. Realty Trust (In re 604 Columbus Ave. Realty Trust)*, 968 F.2d 1332, 1345-48 (1st Cir. 1992) (admitting use of defense in bankruptcy court for equitable subordination, fraud, breach of contract, and conversion); *Holt v. FDIC (In re CTS Truss, Inc.)*, 868 F.2d 146, 150 (5th Cir. 1989) (admitting defense in bankruptcy court for an equitable subordination claim); *Woodstone*, 149 B.R. 294, 295, 300-01 (E.D.N.Y. 1993) (admitting use of defense in bankruptcy court for action to reclassify claim held by FSLIC); *FDIC v. Skotzke*, 881 F. Supp. 364, 368 n.5 (S.D. Ind. 1994) (admitting § 1823(e) as a defense in an ECOA action); *Diamond v. Union Bank & Trust of Bartlesville*, 776 F. Supp. 542, 543 (N.D. Okla. 1991) (admitting § 1823(e) as a defense to a claim under 12 U.S.C. § 1972). Thus, the Court rejects the Plaintiff's argument that the *D'Oench* doctrine and § 1823(e) cannot be applied to actions not involving a bankruptcy trustee. Both the Supreme Court and Congress have had ample opportunity in the past seventy-five years to impose such a limitation but have never done so.

The Court therefore finds that there is no reason to hold that *D'Oench* and § 1823(e) are not co-extensive with Title 11. The FDIC's rights do not change because the litigation is before the bankruptcy court. Thus, if there is a valid § 1823(e) or *D'Oench* defense to be asserted, it may be asserted by the FDIC in a bankruptcy case. For these reasons, the Court concludes, as have other courts, that *D'Oench* and § 1823(e) apply in bankruptcy cases to estop a party from relying on an unwritten agreement outside the institution's records in an effort to defeat or diminish the FDIC's interest in an asset.

## 2.  Are Fraudulent Transfer Claims Exempt from Application of § 1823(e)?

This case is different from the typical case where *D'Oench* and § 1823(e) apply.   The Plaintiff argues that the § 1823(e) defense does not apply to a fraudulent transfer claim because such claim does not rely on the enforcement of a secret agreement.  There are two sub-arguments presented here:

The first, relying on *Jobin*, is that the "secret agreement" referred to under the *D'Oench* doctrine must be an agreement between the debtor and the acquired financial institution, and no such agreement is present in this case.  This argument has been considered and rejected in a prior section of this Opinion.

The second argument, relying on *Gallant v. Kanterman (In re Kanterman)*, 108 B.R. 432 (S.D.N.Y. 1989), is that "[a] trustee seeking to avoid and recover fraudulent transfers need not rely on the records of a banking institution to establish actual intent" and therefore the *D'Oench* doctrine and § 1823(e) are inapplicable.  (Resp. p. 4.)  The Court rejects this argument, as well, at least as applied to the undisputed facts here.

If the Plaintiff is merely arguing that it is theoretically possible for a bankruptcy trustee to prove a debtor's fraudulent intent through evidence other than a failed bank's books and records, that statement is obviously true,[8] but of no relevance to the facts of this matter.  Nothing in *Kanterman* suggests that a trustee may ignore the plain language of *D'Oench* and § 1823(e) by introducing into evidence secret agreements that do not appear on the failed bank's records.  And that is precisely what the Plaintiff is attempting to do here.  As previously discussed, the very heart of the Plaintiff's case is that EAR and MTD were parties to a secret arrangement to sell,

---

[8] For example, a sworn admission by a debtor that he acted with fraudulent intent could properly be asserted against the FDIC without running afoul of *D'Oench* and § 1823(e).

resell, lease, and re-lease the same equipment over and over again, while pretending to the outside world that each new sale or lease transaction involved a fresh set of equipment. Therefore, whether or not a secret arrangement was present in *Kanterman*, it is certainly present here, and that secret arrangement is critical to the Plaintiff's fraudulent conveyance claims against the FDIC.

### E. The Plaintiff's Reliance on a "Secret Agreement"

In order to determine whether the Plaintiff's claims are precluded by *D'Oench* or § 1823(e), this Court need not address whether all of the elements for a fraudulent transfer have been met. Instead, the Court need only decide whether the Plaintiff seeks to introduce a secret agreement as evidence of the fraudulent transfer in order to defeat the FDIC's interest in the payments. For the following reasons, the Court finds that this is exactly what the Plaintiff is seeking to do in this matter: First, it is undisputed that there was a secret arrangement (or "agreement," if you prefer) between EAR and MTD to sell, resell, lease, and re-lease the same equipment over and over again, while pretending to the outside world that each new sale or lease transaction involved a fresh set of equipment. Second, it is precisely that secret arrangement between EAR and MTD that made EAR's unlawful and fraudulent scheme both possible and, for a time, successful. As discussed below, it is this Court's opinion that *D'Oench* prevents the introduction of that evidence against the FDIC, and summary judgment must therefore be awarded in favor of the FDIC.

Both the purpose for which the agreement is asserted and the form of the arrangement meet the requirements of *D'Oench* and § 1823(e). First, the alleged scheme is obviously being introduced in order to "diminish or defeat" the FDIC's "right, title or interest" in the funds received through 2009 and in the remaining balance in the three notes. Second, the Plaintiff

seeks to introduce evidence of the arrangement between EAR and MTD to establish that transfers were made with the intent to hinder, delay, and defraud creditors because the collateral was either already pledged to another creditor or did not exist.

The Plaintiff has alleged no facts in the second amended complaint, in his response to the FDIC's statement of material facts, or at oral argument, that would establish fraudulent intent without reliance upon the secret arrangement between EAR and MTD. Specifically, the second amended complaint alleges:

1. "These *transfers were made in furtherance* of Sheldon Player's ("Player") fraudulent lease scheme which caused the loss of tens of millions of dollars." (Second Am. Compl. ¶ 1) (emphasis added).

2. "The funds transferred to Charter Bank were a *part of and furthered Player's scheme*, and therefore, served to hinder, delay, and defraud EAR's creditors." (*Id.* at ¶ 3) (emphasis added).

3. "[The Plaintiff] requests that this Court grant relief that will return the funds which were *transferred to Charter Bank as part of Player's scheme*." (*Id.* at ¶ 4) (emphasis added).

4. "*As part of this fraudulent scheme*, Player caused EAR to enter into financing and financing-type lease agreements with certain entities. . . ." (*Id.* at ¶ 13) (emphasis added).

5. "The transactions with Charter Bank are of the type of financing arrangements that Player *used to perpetuate his wrongful scheme*." (*Id.* at ¶ 20) (emphasis added).

6. "Because the transfers made to Charter Bank were *part of Player's fraudulent scheme*, the transfers that EAR made to Charter Bank in satisfaction of the Agreements *were made with the actual intent* to hinder, delay, and defraud EAR's remaining creditors." (*Id.*) (emphasis added).

7. "The Transfers were *made as a part of the fraudulent scheme* perpetrated at EAR by Sheldon Player." (*Id.* at ¶ 24) (emphasis added).

The Plaintiff's claims against the FDIC are utterly dependent upon him proving the existence of the alleged scheme between EAR and MTD. Thus, if the Plaintiff cannot introduce

evidence of the scheme, he will have failed to establish the requisite intent, and his causes of action for recovery of fraudulent conveyances will therefore fail.

Like the debtors in *Langley* and *D'Oench*, EAR "lent [itself] to a scheme or arrangement whereby the banking authority [Charter] . . . was likely to be misled" and therefore "that scheme or arrangement [can] not be the basis for a [claim] against the FDIC." *D'Oench*, 315 U.S. at 460; *Langley*, 484 U.S. at 92. Moreover, at the heart of the scheme was an agreement between EAR, or a representative of EAR, and MTD. This agreement as well as others made up the scheme. Here, the scheme to defraud creditors was unknown by Charter and the alleged leasebacks were also unknown by Charter, were not in writing, were not executed by Charter, were not approved by the board of directors of Charter, and were never memorialized in any official record of Charter.

Contrary to what the Plaintiff argues in his response, the purpose of *D'Oench* and § 1823(e) would best be served by allowing the FDIC to assert its defenses. The purpose of § 1823(e) is to ensure that bank examiners can rely on a bank's records in evaluating its assets. *Langley*, 484 U.S. at 91. The fact that the secret agreement was between EAR and MTD and did not involve Charter as a party does not change that result. *D'Oench* and § 1823(e) concern the evidence used to defeat the government's interest, not who is attempting to do so. They apply to any party attempting to defeat the government's interest in assets acquired from a failed institution, not simply to those who are the "contractual" parties. *Jobin*, 160 B.R. at 167.

Indeed, the fact that EAR and some of its representatives took great pains to hide its fraudulent arrangement with MTD from Charter (and thus from the FDIC) is exactly the kind of conduct that *D'Oench* and § 1823(e) are designed to protect against. The Supreme Court clearly understood that "[t]he harm to the FDIC caused by the failure to record occur[red] no later than

20

the time at which it conduct[ed] its first bank examination that [was] unable to detect the unrecorded agreement and to prompt the invocation of available protective measures, including termination of the bank's deposit insurance." *Langley*, 484 U.S. at 95. In the instant matter, the FDIC was harmed as soon as it became receiver for Charter because the secret arrangement between EAR and MTD had already been made.

### F. Count IV—11 U.S.C. § 502(d)

In Count IV of the second amended complaint, the Plaintiff seeks disallowance of Charter's claim under § 502(d). Under § 502(d), "the court shall disallow any claim of any entity from which property is recoverable under section . . . 550, . . . or that is a transferee of a transfer avoidable under section . . . 548 . . . , unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550. . . ." 11 U.S.C. § 502(d).

Because the Court finds that the transfers made by EAR to Charter cannot be avoided and recovered by the Plaintiff as fraudulent, judgment is granted in favor of the FDIC on Count IV. Accordingly, Charter's Claim No. 89-1 is not disallowed.

## V.    CONCLUSION

To summarize, the Court holds that the defenses of § 1823(e) and *D'Oench* do apply in bankruptcy. The Court further holds that, while the existence of a secret arrangement or scheme is a necessary part of that defense, there is no requirement that the acquired bank be a party to that secret arrangement or scheme. Because the undisputed facts demonstrate that a secret arrangement between EAR and MTD is at the heart of the Plaintiff's claims, and because the defenses of *D'Oench* and § 1823(e) preclude the Plaintiff from relying on such a secret

arrangement to prove EAR's fraudulent intent, the Court holds that the FDIC is entitled to summary judgment in its favor.

For the foregoing reasons, the Court grants the FDIC's motion for summary judgment on all counts of the second amended complaint.

**ENTERED:**

DATE: **NOV 2 1 2016**

Donald R. Cassling
**Donald R. Cassling**
**United States Bankruptcy Judge**